# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

v.                                             **CAUSE NO. 1:18CR113-LG-JCG-3**

**RICO LANEAUX and BRANDON WILLIAMS**

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS

**BEFORE THE COURT** is the [53] Motion to Suppress filed by the defendant Brandon Williams in this conspiracy case. The Court conducted a hearing on the Motion on August 13, 2019. After reviewing the submissions of the parties and considering the testimony and video evidence presented at the hearing, the Court finds that the Williams' Motion to Suppress should be denied.

## I. BACKGROUND

On January 27, 2017, Texas State Trooper Orlando Jacobs conducted a traffic stop of a Nissan Maxima driven by Shacory Holder, for following too closely and two improper lane changes. Williams was a passenger in the vehicle. When Trooper Jacobs questioned Holder and Williams about the vehicle's ownership, Williams said it had been rented by someone else for Rico Laneaux, his cousin. When asked, Holder and Williams gave inconsistent responses concerning their travel itinerary. They also did not have the rental documentation for the vehicle. Trooper Jacobs also testified that Holder appeared to be nervous. Trooper Jacobs also testified that he could not determine whether Holder and/or Williams had permission to operate

the vehicle from the information provided. Trooper Jacobs asked to search the vehicle, but Williams denied the request. Trooper Jacobs then called for a K-9 officer to assist.

Texas State Trooper Garcia and his K-9 officer, Yeti, arrived just over twenty minutes later. Yeti has been trained to alert by biting and/or scratching at the area where he detects narcotics. A dashcam recording showed Yeti conducting a full pass around the vehicle. Trooper Garcia testified that, as Yeti was beginning his second pass, Yeti's breathing pattern changed, and he turned his head to the side in an aggressive manner. This indicated to Trooper Garcia that Yeti had detected and alerted to the presence of narcotics. Trooper Garcia then gave Yeti the command of "hup," which instructs Yeti to put his front paws on the vehicle so that his nose will be higher. Trooper Garcia testified that Yeti then alerted by scratching the hood of the vehicle. As a result of Yeti's alert to the presence of narcotics, Troopers Garcia and Jacobs searched the vehicle. They discovered a green container inside of which was a large amount of methamphetamine.

Holder, Williams, and Laneaux were each charged with one count of conspiracy to possess with intent to distribute methamphetamine.[1] Williams filed the present Motion to Suppress, arguing that Yeti's sniff of the vehicle was too short, and that Yeti did not actually alert to the presence of narcotics. At the suppression hearing, Williams presented testimony from Sergeant Eugene Palmer,

---

[1] Holder has been dismissed from the case because he is facing related charges in Texas.

an expert in the training and handling of K-9 officers. Sergeant Palmer opined that videos of other sniffs reveal that Yeti is too dependent on Trooper Garcia for guidance. He also opined that Trooper Garcia cued Yeti to alert when he gave the command, "hup." However, Sergeant Palmer conceded that he often uses the "hup" command to instruct K-9 officers to lift their front paws onto the vehicle in order to raise their noses higher. He also conceded that he was not able to see Yeti's alerting behavior prior to the command to "hup" because that portion of the vehicle was not visible on the dashcam video.

## II. DISCUSSION

"The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (quoting *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993)). "A dog sniff . . . is a measure aimed at detecting evidence of ordinary criminal wrongdoing," and, unlike a routine check of a driver's license or insurance card, conducting a dog sniff is not "an ordinary incident of a traffic stop." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615, (2015) (internal quotation marks omitted). Therefore, an officer who has stopped a driver for a traffic-related violation may not extend the stop for a dog sniff "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.*

Williams does not argue in his Motion that Trooper Jacobs lacked reasonable suspicion to request the assistance of a K9 officer. However, the Court notes that

-3-

reasonable, articulable suspicion of criminal activity justified Trooper Jacobs' decision to request a dog sniff. Holder and Williams gave inconsistent answers to his questions about where they were coming from and what they were doing. Holder seemed very nervous, burping and repeatedly stating that he had to urinate. In addition, Trooper Jacobs was unable to determine whether Holder and Williams had permission to use the vehicle in which they were traveling since they could not produce automobile rental documents. Under these circumstances, the Court finds that Trooper Jacobs had reasonable suspicion of criminal activity. The canine sniff of the vehicle was accordingly justified.

An alert by a drug dog is sufficient to create probable cause for a search. *United States v. Rivas*, 157 F.3d 364, 368 (5th Cir. 1998). Whether a dog alerts is a question of fact. *United States v. Smith*, 355 F. Supp. 3d 544, 552 (N.D. Miss. 2018 (citing *United States v. Mason*, 628 F.3d 123, 130 (4th Cir. 2010)). The Supreme Court has explained that

> a probable-cause hearing focusing on a dog's alert should proceed much like any other. The court should allow the parties to make their best case, consistent with the usual rules of criminal procedure. And the court should then evaluate the proffered evidence to decide what all the circumstances demonstrate. If the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause. If, in contrast, the defendant has challenged the State's case (by disputing the reliability of the dog overall or of a particular alert), then the court should weigh the competing evidence. . . . The question – similar to every inquiry in probable cause – is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person

>think that a search would reveal contraband or evidence
> of a crime.

*Florida v. Harris*, 568 U.S. 237, 247-48 (2013).

Even if the dog is generally reliable, "circumstances surrounding a particular alert may undermine the case for probable cause – if, say, the officer cued the dog (consciously or not), or if the team was working under unfamiliar conditions." *Id.* But "a canine 'alert' is not always an objectively verifiable event. In some instances, an alert is simply an interpretation of a change in the dog's behavior by a human handler." *United States v. Outlaw*, 134 F. Supp. 2d 807, 813 (W.D. Tex. 2001), *aff'd*, 319 F.3d 701 (5th Cir. 2003). The Tenth Circuit has held that "[a] behavior change alone would not constitute probable cause." *United States v. Munoz-Nava*, 524 F.3d 1137, 1145 (10th Cir. 2008). However, "[t]he absence of a full alert does not negate probable cause when other circumstances support such a finding." *Id.* The Court may still consider the behavior change in making the totality-of-the-circumstances probable cause determination. *Id.* at 1146.

"[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Id.* at 246. Likewise, "if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs," the dog may be deemed generally reliable. The defendant may challenge the dog's reliability by "cross-examining the testifying officer or by introducing his own fact or expert witnesses." *Id.* at 247.

Trooper Garcia testified that Yeti undergoes weekly training, bi-monthly evaluations, and annual certification. The Government presented certification that

the Texas Department of Public Safety Canine Program evaluated Yeti and Trooper Garcia in May 2017, determining that their performance "clearly reflect[ed] their reliability in the detection of heroin, cocaine, marijuana and methamphetamine." (Hearing Ex. G-3, ECF No. 67-5.) The Government also produced Yeti's evaluations conducted in the year prior to the canine sniff at issue, which reflect "good" and "satisfactory" ratings. Yeti's training and evaluations demonstrate his general reliability in detecting narcotics. Additionally, videos that Williams presented of other sniffs undertaken by Yeti support a finding that Yeti is capable and reliable. Although Williams' expert, Sergeant Palmer, opined that Yeti was overly reliant upon his handler when sniffing for contraband, Palmer conceded that Yeti is capable and can detect and alert to the presence of narcotics.

With respect to the stop at issue in this case, Trooper Garcia testified that Yeti, through his behavior, alerted to the presence of narcotics before Trooper Garcia gave Yeti the "hup" command to place his front paws on the vehicle. The dashcam video does not clearly depict Yeti's behavior because the camera's view is obstructed by the stopped vehicle. Palmer admitted that he could not see Yeti's behavior at the time of the alleged alert. The Court accepts Trooper Garcia's uncontradicted testimony. The totality of the evidence adduced at the hearing demonstrates that Yeti is a reliable narcotics detection K-9. The evidence does not support the contention that Yeti was "cued" to alert. Instead, in accord with his training, Yeti properly alerted to the presence of narcotics in the stopped vehicle.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the [53] Motion to Suppress filed by the defendant Brandon Williams is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 21st day of August, 2019.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE